IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| James J. McKay, | : | |
| Plaintiffs | : | Civil Action 2:14-cv-00512 |
| v. | : | |
| JPMorgan Chase Bank, N.A., | : | Magistrate Judge Abel |
| Defendant | : | |

# ORDER

Plaintiff James J. McKay brings this action against defendant JP Morgan Chase Bank, N.A. ("Chase") asserting violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, *et seq.* ("RESPA"), the Truth in Lending Act, 15 U.S.C. § 1601, *et al.,* ("TILA") and Regulation Z, 12 C.F.R. § 226, and for claims under Ohio law for negligent servicing and fraud. This matter is before the Court on defendant Chase's July 14, 2014 motion to dismiss the complaint (doc. 9).

    **I.    Allegations in the Complaint**

Plaintiff James McKay and Kimberly McKay are joint owners of record of real estate located at 45 Southview Drive, Sunbury, Ohio.[1] A mortgage of the property to

---

[1] Complaint, ¶¶ 9 and 10.

Washington Mutual in the amount of $114,400.00 is recorded.[2] Kimberly McKay filed a Chapter 7 bankruptcy in November 2011, and she received a discharge February 28, 2012.[3] During the bankruptcy, there was an adversary proceeding in which James McKay, Kimberly McKay, and defendant JP Morgan Chase Bank, N.A. were defendants. In that proceeding, the Chapter 7 Trustee argued that only James McKay was the borrower on the mortgage note and that Kimberly McKay never delivered a 50% interest in the real property to Washington Mutual. The adversary proceeding was settled. Kimberly McKay's liability on the note was discharged.[4]

During this time, James McKay attempted to make mortgage payments, but Chase rejected them.[5] He also sought to refinance the loan, but was turned down because there was a lock on his credit report caused by Chase's failure to report the status of the mortgage following the resolution of the adversary proceeding.[6] In February 2014, McKay was turned down for a job which he would have resulted in a significant increase in income after the prospective employer reviewed his credit report.[7]

---

[2]*Id.*, ¶ 11.

[3]*Id.*, ¶ 12.

[4]*Id.*, ¶¶ 12-15.

[5]*Id.*, ¶¶ 16-17.

[6]*Id.*, ¶¶ 18-19.

[7]*Id.*, ¶ 20.

On April 10, 2014, McKay's attorney sent a qualified written request ("QWR"), written notice of error about the status of the loan, and a written notice of error requesting a reinstatement figure to Chase.[8] Chase did not timely acknowledge receipt of the QWR.[9]

The complaint pleads violations of the Fair Debt Collection Practices Act ("FDCPA"), Real Estate Settlement Procedures Act ("RESPA"), and Truth-in-Lending Act, as well as claims for negligent servicing and common law fraud. In response to the motion to dismiss, plaintiff concedes that the complaint fails to state a claim for relief under the Truth-in-Lending Act. The allegations regarding the remaining claims are as follows.

FDCPA. The complaint pleads on information and belief that Chase was the mortgage servicer of the loan from 2011 to January 2014.[10] Nonetheless, the complaint asserts that Chase was acting as a debt collector, not a servicer or mortgage company:

> 27. Based upon information and belief, Chase can be held liable under the FDCPA as their actions fall outside the exception under 15 U.S.C. § 1692(l)(b)(1)(B) as "mortgage company" at all times is acting as a debt collector and not a mortgage servicer when sending correspondence to the "their last name" in the name of "mortgage company". *see Bridge v. Ocwen Federal Savings Bank*, 681 F. 3d 355, 359, 362 (6th Cir. 2012). In addition, Chase can be found as a debt collector if at the time of transfer of the loan to Chase, the loan was in default or if Chase treated the loan as if it were in default at the time of the assignment. *Bridge* at 362.

---

[8]*Id.*, ¶ 22.

[9]*Id.*, ¶ 23.

[10]*Id.*, ¶ 26.

3

> 28. Pursuant to Bridge, Chase never provided any written communication to the Plaintiff that Chase was acting on behalf of Washington Mutual. Additionally there is no dispute that during all times herein Chase has acted as if the loan was in default. [11]

The complaint alleges that Chase violated the FDCPA by failing to notify McKay of the servicing transfer from Washington Mutual; failing to provide him with written notices as to the status of his account; and rejecting payments from him; and knowingly causing misinformation to be reported on his credit.[12]

RESPA.  Plaintiff's April 10, 2014 QWR made requests pursuant to 12 U.S.C. § 2605(e)(2) and (e)(3) for the life of loan history of the borrower's account along with a specific explanation of the payment history that the borrower is disputing and a request for the contact information for any party with the "Mortgage Company" that could provide assistance with further QWR inquiries or loss mitigation.[13] McKay "believed that payments from July 2012 were being misapplied or outright wrongly rejected . . . ."[14] The QWR sought Chase to reasonably investigate and correct McKay's credit. By failing to respond to the QWR, Chase has continued to misapply payments and cause

---

[11]*Id.*, ¶¶ 27-28.

[12]*Id.*, ¶ 29.

[13]*Id.*, ¶ 36.

[14]*Id.*, ¶ 37.

4

McKay's credit rating to be affected in violation of 12 U.S.C. § 2605(e).[15] The complaint pleads damages for the RESPA violations:

> 41. In this case, the totality of the actual damages has yet to be ascertained due to the on-going litigation expenses related to the alleged RESPA Violation. The actual damages known as this time are $ based upon the attorney fees and costs of the QWR mailings. The remaining actual damages to be determined at trial can still be considered since they relate to the original RESPA violation. *See Houston v. U.S. Bank Home Mortg. Wis. Servicing*, 505 F. App'x 543, 548 (6th Cir. 2012 – unpublished opinion). See also Marais v. Chase Home Finance, Case No. 12-4248, at 15, 17 (6th Cir. 11/26/2013).[16]

Negligent servicing. The complaint pleads that Chase failed to provide McKay an opportunity to reinstate his account and failed to provide him with an opportunity to modify his loan and mitigate the missed payments.[17]

Common law fraud. The complaint alleges:

> 58. Based upon the allegations above, Chase has engaged in a pattern and practice of misrepresenting the status of the Plaintiff's mortgage account and has denied him opportunity after opportunity to reinstate his loan or at the very least resume payments on his loan.
> 59. The reliance of the assertions alleged above have caused the Plaintiff to be forced to engage two separate sets of counsel in an effort to clarify the accounting of each mortgage and Chase has knowingly and willingly failed to respond to the Plaintiff.

---

[15]*Id*. The complaint cites *Johnstone v. Bank of America, N.A.*, 173 F. Supp. 2d 809, 814 (ND Ill. 2001) to explain this RESPA claim.

[16]*Id.*, ¶ 41.

[17]*Id.*, ¶ 54.

60. As a result of this reliance and delay, Plaintiff and Plaintiff's Counsel have been clearly harmed and Plaintiff is entitled to receive punitive damages.[18]

## II. Arguments of the Parties

### A. Defendant JP Morgan Chase Bank, N.A.

Chase argues that plaintiff's FDCPA claim fails because Chase is not a "debt collector" as defined by the statute. To be a debt collector the party must either have debt collection as the principal purpose of their business or regularly engage in debt collection. The principal purpose of Chase's business is not to collect debts on behalf of another. Chase also argues that the complaint fails to allege that the loan was in default at the time Chase acquired it. On September 25, 2008, Chase acquired the loan by operation of law from the FDIC. The complaint alleges that "there is no dispute that during all times herein Chase has acted as if the loan was in default." Compl. at ¶ 28. Chase maintains, however, that this allegation does not plead sufficient facts to support a claim that Chase treated the loan as if were in default at the time of the 2008 acquisition. Chase contends that plaintiffs fail to make any factual assertions about the servicing of the loan by Chase in 2008 or any time prior to the filing of bankruptcy by Kimberly McKay in 2011.

Chase also argues that plaintiff's RESPA claim should be dismissed because plaintiff cannot show that he suffered any actual damages. According to defendant, under RESPA, a plaintiff must suffer actual demonstrable damages that occur as a

---

[18]*Id.*, ¶¶ 58-60.

6

result of a specific violation. Merely claiming to have suffered damages, without more, will not survive a motion to dismiss. Chase maintains that plaintiff has not pled any facts showing that he suffered actual damages that are plausibly resulting from an alleged failure by Chase to properly respond to his QWR. Plaintiff simply alleges that he incurred the additional expense of hiring an attorney and sending out the QWR request. Chase argues the cost of sending a QWR does not satisfy the actual damages requirement.

Chase also argues that it did not violate the credit reporting provisions of 12 U.S.C. § 2605(e)(3). According to Chase, RESPA provides that when a servicer receives a QWR relating to a dispute regarding the borrower's payments, the servicer may not provide information to any consumer reporting agency during the 60 day QWR response period. Chase maintains that plaintiff's QWR was not sufficiently specific to constitute a dispute regarding his payments because he did not identify a single, specific payment that was the subject of his dispute.  Chase maintains that even if plaintiff's QWR was sufficient to invoke the credit protections of RESPA, plaintiff failed to allege that Chase improperly reported his loan to a credit reporting agency. Instead, plaintiff makes an unsupported allegation that his credit rating was affected due to Chase not responding to the QWR. Chase also contends that plaintiff failed to allege that Chase provided any information to a single credit reporting agency relating to the 60-day response period or to his QWR.

7

Chase argues that plaintiff's TILA claim fails because the complaint fails to contain any allegations concerning the TILA or Regulation Z.

Chase further argues that plaintiff's claim for negligent servicing fails because common law negligence only provides a remedy for negligently inflicted physical harm to persons or property. Because plaintiff has not alleged any physical harm or injury, his claim for negligent servicing fails. Chase maintains that this claim also fails because plaintiff cannot maintain a tort action based on a contract. Chase contends that plaintiff's claim for common law fraud fails because McKay has not alleged that Chase made any false representation of fact to him. Plaintiff also does not allege that he ever relied on a false representation made by Chase or that he did so to his own detriment. Chase argues that even if plaintiff had pleaded all the elements of a claim for fraud, he has not done so with the particularity required by Rule 9(b).

### B. Plaintiff James J. McKay

Plaintiff argues that his FDCPA claim is properly pled and that defendant's arguments are more akin to arguments made at summary judgment. The complaint puts Chase on notice of possible liability under the FDCPA because Chase never recorded an assignment of mortgage until January 2014, making their communications more similar to those of a debt collector. Plaintiff was not made aware of the purchase of the loan formally transferring the loan following the FDIC-governed purchase and assumption of Washington Mutual's assets by Chase. Because Chase failed to notify

8

McKay of the formal assumption, plaintiff contends that definition of debt collector may extend to Chase.

Plaintiff maintains that Chase is asking this Court to ignore the Sixth Circuit's decision in *Marais v. Chase Home Finance LLC*, 736 F.3d 711 (6th Cir. 2013). Actual damages that are inartfully plead and itemized are sufficient to survive a motion to dismiss. Plaintiff argues that by alleging actual damages of prospective attorney fees, postage, and a known speculative economic loss of a lost employment opportunity resulting from a failure to respond to the QWR, he has sufficiently stated a claim under RESPA.

Plaintiff contends that Chase's remaining argument concerning his RESPA claim should be resolved through a motion for summary judgment. Plaintiff concedes its TILA claim should be characterized as claim under RESPA.

With respect to his claim for negligent servicing, plaintiff requests an opportunity to amend his complaint to plead a claim for breach of contract. Plaintiff maintains his claim for fraud was pleaded with sufficient particularity.

### III. Motion to Dismiss

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1982); *Smart v.*

*Ellis Trucking Co.*, 580 F.2d 215, 218 n.3 (6th Cir. 1978); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976).  Although the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, *see Kugler v. Helfant*, 421 U.S. 117, 125-26 n.5 (1975); *Smart*, 580 F.2d at 218 n.3; *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975), a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations.  *See Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971); *Sexton v. Barry*, 233 F.2d 220, 223 (6th Cir. 1956).  In reading a complaint, however, a court will indulge all reasonable inferences that might be drawn from the pleading.  *See Fitzke v. Shappell*, 468 F.2d 1072, 1076 n.6 (6th Cir. 1972).

When determining the sufficiency of a complaint in the face of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court will apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); s*ee also McClain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232 (1980); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983); *Neil v. Bergland*, 646 F.2d 1178, 1184 (6th Cir. 1981); *Parker v. Turner*, 626 F.2d 1, 7 (6th Cir. 1980).  Because the motion under Fed. R. Civ. P. 12(b)(6) is directed solely to the complaint itself, *see Roth Steel Prods.*, 705 F.2d at 155; *Sims v. Mercy Hosp. of Monroe*, 451 F.2d 171, 173 (6th Cir. 1983), the court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the

10

plaintiff will ultimately prevail.  *See Scheuer*, 416 U.S. at 236; *McDaniel v. Rhodes*, 512 F. Supp. 117, 120 (S.D. Ohio 1981).  A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted.  *See Roth Steel Prods.*, 705 F.2d at 155; *Sims*, 451 F.2d at 173.

A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant.  *See United States v. School Dist. of Ferndale*, 577 F.2d 1339, 1345 (6th Cir. 1978); *Westlake v. Lucas*, 537 F.2d at 858; *Dunn v. Tennessee*, 697 F.2d 121, 125 (6th Cir. 1983).  Fed. R. Civ. P. 8(a)(2) simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *See Dunn*, 697 F.2d at 125; *Westlake*, 537 F.2d at 858.

The court will grant a defendant's motion for dismissal under Fed. R. Civ. P. 12(b)(6) if the complaint is without any merit because of an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim.  *See generally Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978); *Ott v. Midland-Ross Corp.*, 523 F.2d 1367; *Brennan v. Rhodes*, 423 F.2d 706 (6th Cir. 1970).  It is not necessary that a plaintiff set forth in a complaint the legal theory on which plaintiff relies if the complaint sets forth sufficient factual allegations to state a claim showing that plaintiff is entitled to any relief which can be granted.  *See Rohler v.*

*TRW, Inc.*, 576 F.2d 1260, 1264 (7th Cir. 1978); *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974); *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 24-25 (4th Cir. 1963).

## IV. Discussion

### A. Fair Debt Collection Practices Act

The purpose of the Fair Debt Collection Practices Act is

> to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692(e). A "debt collector" is defined as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). The FDCPA does not apply to a party to whom the debt is due. The FDCPA "refers only to persons attempting to collect debts due 'another.'" *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 735 (6th Cir. 2007). The statute further provides that the definition of a debt collector does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person . . . ." 15 U.S.C. § 1692a(6)(F). Creditors and mortgage servicers are excluded from the definition of "debt collector" if the creditor or servicer did not acquire the debt when it was in default or treat the debt as if it were in default at the time of acquisition. *Bridge v. Ocwen Fed. Bank.*, 681 F.3d 355, 362 (6th Cir. 2012) ("For an entity that did not

12

originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired.").

Plaintiff's reliance on *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355 (6th Cir. 2012) is misplaced. In *Bridge* there was no assignment of record to establish that the defendants were either a creditor or a loan servicer. Maintaining that they were the creditor and loan servicer, the defendants argued that they were not subject to the FDCPA. Because the defendants sought collection of the debt, which they claimed was already in default at the time they obtained it, the court concluded they were subject to the FDCPA even if they were the creditor and servicer. *Id*. at 360.

Plaintiff has not alleged that Chase received the debt for the purpose of collecting for another or that the loan was in default at the time of acquisition. Because plaintiff has not alleged facts showing that Chase is a debt collector under the FDCPA, his claim fails as a matter of law.

### B. Real Estate Settlement Procedures Act

The complaint alleges that McKay sent a QWR on or about April 10, 2014, which included requests subject to 12 U.S.C. § 2605(e)(2) and (e)(3). Plaintiff requested the life of the loan history of his account along with a specific explanation of the payment history that he disputed and contact information for a Chase representative that could provide assistance with further QWR inquiries or loss mitigation. Plaintiff believed that payments from July 2012 were being misapplied our wrongly rejected. By failing to

13

respond to plaintiff's inquiry, Chase continued to misapply payments, impacting his credit rating in violation of 12 U.S.C. § 2605(e). Chase failed to acknowledge receipt of plaintiff's correspondence within twenty days as required by statute. Plaintiff was forced to incur additional expense to hire an attorney to send out a QWR. The complaint alleges that the totality of the actual damages has yet to be ascertained due to the ongoing litigation expenses related to the alleged RESPA violation.

Section 2605(e)(2) of Title 12 of the United States Code requires loan servicers to respond to inquiries by borrowers:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
> . . .
>
> Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall–
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–
>
> (I) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

14

> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
>
> (I) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2). Additionally, during the 60-day period, a servicer may not provide information regarding any overdue payment owed by the borrower and relating to such period or qualified written request to any consumer reporting agency. 12 U.S.C. § 2605(e)(3).

> Section 2605(f) provides, in relevant part:
>
> (f) Damages and costs
> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
> (1) Individuals In the case of any action by an individual, an amount equal to the sum of—
> (A) any actual damages to the borrower as a result of the failure; and
> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

Defendant maintains that plaintiff's RESPA claim fails to allege any actual damages, however, in *Marais v. Chase Home Finance*, the Sixth Circuit reversed the dismissal of a

15

RESPA claim because it reasonably inferred that the failure to correct or investigate misapplied payments caused the plaintiff to pay interest on a higher principal balance than she should have. 736 F.3d 711, 720-21 (6th Cir. 2013). The *Marais* decision emphasized that on a motion for judgment on the pleadings the court should not pre-judge whether a plaintiff can prove actual damages. In addition to the specific holding that additional fees incurred by reason of the bank misapplying payments constituted actual damages, the court recognized that the costs incurred in preparing a QWR might be recoverable as actual damages. Here, the complaint alleges:

> The basis of Borrower's QWR request was that Borrower's believed that payments from July 2012 were being misapplied or outright wrongly rejected and the request was made to Chase to reasonably investigate and correct Borrower's Credit pursuant to 12 U.S.C. § 2605(e). By failing to respond to this specific inquiry, Chase has continued to misapply payments and cause the Borrower's credit rating to be affected in violation of 12 U.S.C. § 2605(e). *See Johnstone v. Bank of America, N.A.,* 173 F. Supp. 2d 809, 814 (N.D. Ill. 2001).

Compl. ¶ 37. The complaint further alleges that "the totality of the actual damages has yet to be ascertained due to the ongoing litigation expenses. . . . The remaining actual damages to be determined at trial can still be considered since they relate to the original RESPA violation." *Id.* at ¶ 41. Under *Marais*, plaintiff has stated a claim upon which relief may be granted.

Although the allegations are not entirely clear, the complaint asserts that defendant violated 12 U.S.C. § 2605(e)(3):

> 16. Since the commencement of the adversary case, the Plaintiff has made regular efforts to try and make a mortgage payment to

16

> Chase. These efforts included letters, email conversations with Chase's attorneys of record during the Adversary Case, and hiring prior counsel to send two Qualified Written Requests during early 2013 and late 2013.
>
> 17. During this entire period of time, Plaintiff has been unable to make payment and Chase has repeatedly rejected payments and upon information and belief, Chase additionally began reporting all delinquencies on or about January 5th, 2014 to the present.
>
> 18. During this entire period of time, Plaintiff has sought to obtain refinancing of this property with several lenders only to be turned down due to a lock on his credit report and Chase's failure to report the status of the mortgage following the resolution of the adversary case.
>
> 19. Upon information and belief, on or about January 5th, 2014 Chase did remove an internal "lock" on the Plaintiff's account and has begun sending him routine solicitations and begun regular collection calls to Plaintiff despite receiving notices of representation from prior counsel and present counsel. Upon information and belief, Chase has begun also reporting a delinquency on Plaintiff's Credit Report as of January 5th, 2014 without making any notation of the dispute based upon the Qualified Written Requests sent in 2013.
>
> 20. On or about February 28th, 2014, Plaintiff was turned down for a position with Raiser Columbus in which he would have experienced a significant increase in income. The reason for his denial was based on Raiser's review of the Plaintiff's credit report. A copy of the email correspondence from Raiser's representatives is attached as Exhibit C.

Doc. 1 at PageID# 3. Plaintiff's claim for violation 12 U.S.C. § 2605(e)(3) appears to be based on QWRs made in 2013 rather than the April 2014 QWR. Plaintiff has stated a claim upon which relief may be granted.

### C. Truth In Lending Act and Negligent Servicing Claims

Plaintiff concedes that his TILA was improper and asks the Court to reclassify his claim under RESPA. Plaintiff also seeks to amend his negligent servicing claim to one for breach of contract. If plaintiff intends to amend his complaint, he must file a motion seeking leave to amend within fourteen days of the date of this Order.

### D. Fraud

Rule 9(b) of the Federal Rules of Civil Procedure states "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The complaint alleges:

> 58. Based upon the allegations above, Chase has engaged in a pattern and practice of misrepresenting the status of the Plaintiff's mortgage account and has denied him opportunity after opportunity to reinstate his loan or at the very least resume payments on his loan.
>
> 59. The reliance of the assertions alleged above have caused the Plaintiff to be forced to engage two separate sets of counsel in an effort to clarify the accounting of each mortgage and Chase has knowingly and willingly failed to respond to the Plaintiff. \60. As a result of this reliance and delay, Plaintiff and Plaintiff's Counsel have been clearly harmed and Plaintiff is entitled to receive punitive damages.

Doc. 1 at PageID# 9. Here, the complaint fails to state with the particularity the alleged facts constituting fraud. In Ohio, the elements of fraud are (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) that is material to the transition at hand, (c) made falsely, or with such utter disregard and recklessness as to its truth or

18

falsity that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or the concealment, and, (f) a resulting injury proximately caused by the reliance. *MedChoice Financial, LLC v. ADS Alliance Data Sys., Inc.*, 857 F. Supp. 2d 665, 670 (S.D. Ohio 2012).

Here, the complaint fails to identify a representation of fact made to him or that plaintiff relied on such representation to his detriment. As a result, plaintiff has failed to allege the elements necessary to sustain his claim for fraud.

### V. Conclusion

For the reasons stated above, defendant Chase's July 14, 2014 motion to dismiss the complaint (doc. 9) is GRANTED in part and DENIED in part. Plaintiff's RESPA claims remain pending. All other claims are DISMISSED. Any motion for leave to file an amended complaint must be filed within fourteen (14) days of the date of this Order.

s/Mark R. Abel
United States Magistrate Judge